JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON FORBEL THINN, | ) NO. CV 21-6403-JLS(E) |
| Plaintiff, | ) |
| v. | ) ORDER DISMISSING COMPLAINT |
| | ) WITH LEAVE TO AMEND |
| J. WILLIAMS, et al., | ) |
| Defendants. | ) |
| _____ | ) |

        For the reasons discussed below, the First Amended Complaint is dismissed with leave
to amend.  See 28 U.S.C. § 1915(e)(2)(B).

**BACKGROUND**

        On August 9, 2021, Plaintiff, a state prisoner proceeding in forma pauperis, filed this civil
rights action pursuant to 42 U.S.C. section 1983.  Plaintiff sues prison officials at Plaintiff's place
of incarceration, the California State Prison, Los Angeles County ("CSP-LAC").  Defendants are:
(1) correctional officers J. Williams, D. Lewis and J. Rose;  (2) "the higher immediate supervisor"
R.C. Johnson; and (3) Lieutenant Dessenberger.  Plaintiff sues all Defendants in their official and
individual capacities.

The Complaint is not a model of clarity. Plaintiff's handwriting is difficult to decipher, and the Complaint contains exhibits the significance of which is uncertain. The Complaint contains three claims for relief, for: (1) alleged violation of due process; (2) alleged violation of the Eighth Amendment; and (3) alleged violation of Plaintiff's asserted right to "immediate medical care" (Complaint, ECF Dkt. No. 1, pp. 15-17).[1] Plaintiff alleges as follows:

Plaintiff is a "refugee political prisoner" who "falls under American jurisdiction" (id., p. 12). On September 5, 2019, at approximately 8:45 a.m., Plaintiff was standing in the "far yard" with books and stationery, waiting for the "D yard" library to open (id., pp. 6, 15). Plaintiff walked to the D yard "D3 block" and was approached by Defendant Williams and another correctional officer not named as a Defendant (id., p. 12). Plaintiff was asked what Plaintiff was doing (id., p. 12). Plaintiff responded that he was waiting to go to the library (id., p. 12). Plaintiff attempted to walk toward the "D3 building" with his back "turned to the Defendant" [presumably Defendant Williams] (id.). "Defendant" attacked Plaintiff "with a criminal state of mind" and took Plaintiff to the ground, using excessive force (id.). Plaintiff's head hit the concrete pad and his arms were "at full extension" on the ground (id., pp. 12-13). Plaintiff was not resisting, but was following a direct order (id., p. 13). Plaintiff refers to video evidence (id.). Defendant Williams did not act to restore order (id.). Rather, Williams acted maliciously and sadistically for the purpose of causing harm (id.). Plaintiff suffered injuries to his head, arms, shoulders and back (id., p. 16).

After the assault, Plaintiff was seen briefly by a nurse, who logged Plaintiff's injuries on a paper form (id., p. 17). Plaintiff's injuries were visible and more serious than initially thought (id.). Plaintiff's shoulders were extremely painful, and he could not raise his arms over his head (id.). Plaintiff was denied medical attention by a doctor (id.). Physiotherapy treatment was delayed (id.).

---

[1] The Complaint and accompanying exhibits do not bear consecutive page numbers. The Court references the ECF pagination.

On the day of the assault, Plaintiff was "clearly on the list" to use the library, and was waiting to do so with his books and stationery (id., p. 15).  Several times previously, Defendant Williams had stopped Plaintiff from going to the library (id.). Williams and other unidentified correctional officers violated due process by interfering with Plaintiff's right to "get [Plaintiff's] 'deprivation of rights' to get heard by the co's and unable to attend the library because [Plaintiff] was not called" (id.).  Plaintiff has a right to "pursue [Plaintiff's] case in courts and have access on a regular basis to the library without delay" (id.).  Plaintiff "continuously" has been deprived of his constitutional right of access to the courts (id)  Plaintiff's legal materials were lost and destroyed due to the "violence of the excessive force" (id.).

Plaintiff also has been denied immediate medical care (id., p. 17).  Plaintiff saw a doctor on July 28, and an x-ray was performed the next day (id.).  At a follow-up visit on August 28, Plaintiff was prescribed medication, and a "consult for ongoing therapy" was recommended (id.).  Plaintiff also refers to a "consult for mental health" (id.).  On November 19, 2018, doctors "officially diagnosed" Plaintiff, as set forth in the doctors' notes (id.).  Delays in medical care, including delays in "physio and doctors appts and prescriptions," violated Plaintiff's constitutional right (id.).

The Complaint also contains unclear references to: (1) the exhaustion requirement for prisoners' lawsuits (see 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199 (2007)); (2) Haywood v. Drown, 556 U.S. 729 (2009) (holding that a state statute diverting prisoner suits against correctional officers to a court of limited jurisdiction violated the Supremacy Clause); and (3) Kremer v. Chem. Const. Corp., 456 U.S. 461 (1982) (discussing federal courts' obligation to give preclusive effect to a state court judgment upholding an administrative agency's rejection of an employment discrimination claim) (Complaint, pp. 13-14).

In the prayer for relief, Plaintiff states:

[There are] several complicated rules concerning 1983 lawsuits . . . . that seek damages for a prison rule violation . . . .  A person convicted of . . . a rule violation [for] 'obstructing a peace officer' cannot seek damages for 'excessive

force' [unless] the disciplinary violation is first overturned via direct appeal" (id., p. 7).

Plaintiff seeks an injunction "to stop others from doing something . . . such as searching of cells and . . . in person screening coming in and out of building" (id.).  Plaintiff appears to request an extension of the statute of limitations, although this request is unclear (see id.).  Plaintiff also requests compensatory and punitive damages (id.).

Plaintiff attaches to the Complaint various related and unrelated documents, including:

1.  A page from a Rules Violation Report, appearing to charge Plaintiff with willfully resisting a peace officer in the performance of duties on September 5, 2019, and indicating that, on that date: (a) the author of the report and Defendant Williams allegedly observed Plaintiff "out of bounds on the North Yard" and ordered Plaintiff back to his cell; (b) Plaintiff assertedly responded, "I'm not going fucking back to my cell I'm going to canteen"; (c) Plaintiff allegedly refused Defendant Williams' order to submit to handcuffing, instead assertedly backing up and raising his fists up to his chest; (d) the officers took hold of Plaintiff's wrists and put their hands on Plaintiff's upper back or shoulder; (e) the officers allegedly used their physical strength and body weight to push Plaintiff to the ground; (f) Plaintiff landed on his stomach in a prone position; (g) the officers allegedly put Plaintiff's arms behind his back; and (h) Plaintiff allegedly was placed in restraints and escorted out of the yard (Complaint, p. 6);

2.  Documents concerning Plaintiff's appeal in Appeal Log No. 28287, in which Plaintiff allegedly stated that he was the victim of excessive force on September 5, 2019 (id., pp. 8, 27-28, 31);

3.  A document stating that Plaintiff's appeal was "disapproved" on May 21, 2021 (id., p. 9);[2]

4.  A document titled "Appeal of Grievance," which is illegible (id., p. 10);

5.  Documents concerning Plaintiff's alleged appeal in Appeal Log Number 109592, in which Plaintiff assertedly complained that he had not received a package (id., pp. 22-26, 49);

---

[2] It is unclear to what appeal this document refers.

4

6.  A document concerning Plaintiff's health care appeal in Tracking No. LAC HC 20002139, stating that the Health Care Services Office had accepted Plaintiff's grievance for response (id., p. 30);

7.  Documents concerning Plaintiff's appeal in Appeal Log No. 000000126259, including a document showing the alleged rejection of the appeal as duplicative, with the notation "WANTS TO RECEIVE VISITS, DUPLICATE TO LOG 117250" (id., pp. 32-33, 36-39);

8.  A document titled "Tattoo Removal Application Form," in which Plaintiff apparently requested the removal of tattoos (id., p. 40);

9.  An alleged letter to Plaintiff from the Office of the Inspector General, dated December 29, 2020, assertedly responding to Plaintiff's complaint of alleged excessive force on September 5, 2019 (id., pp. 41-42);

10.  An alleged letter to Plaintiff from the California State Auditor, dated November 5, 2020, assertedly responding to Plaintiff's alleged complaint of "an improper governmental activity" within the prison (id., pp. 43-44);

11.  Documents concerning Plaintiff's health care appeal in Tracking No. LAC HC 21000479, allegedly concerning Plaintiff's medications (id., pp. 45-46, 48);

12.  Two letters to Plaintiff from a law firm, dated January 25, 2021 and June 14, 2021 (id., pp. 50-51);

13.  A letter to Plaintiff from the California Department of General Services, dated December 23, 2020, stating that Plaintiff's claim allegedly was incomplete (id., p. 52);

14.  Two documents titled "Authorization for Release of Protected Health Information," apparently signed by Plaintiff (id., pp. 53, 55); and

15.  Two documents titled "CSP-LAC Medical Records Department Mental Health File Review," apparently completed by Plaintiff (id., pp. 54, 56).

## DISCUSSION

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Conclusory allegations

are insufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 686 (2009).  "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."  Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (citations and quotations omitted).  A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. at 678 (citation and internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Here, although Plaintiff purports to sue Defendants D. Lewis, J. Rose, R.C. Johnson and Dessenberger, the Complaint contains no factual allegations showing these Defendants committed any alleged wrongdoing.  To state a cognizable section 1983 claim, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).  A complaint is subject to dismissal if one cannot determine from the complaint who is being sued and for what relief.  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996); see also Chevalier v. Ray & Joan Kroc Corps. Cmty. Ctr., 2012 WL 2088819, at *2 (N.D. Cal. June 8, 2012) (complaint that failed to "identify which wrongs were committed by which Defendant" insufficient).

Furthermore, many of the attachments to the Complaint appear to concern events and/or grievances which do not relate to the claims alleged in the Complaint.  Similarly, the prayer for relief appears to seek relief unrelated to Plaintiff's claims (e.g., an injunction related to cell searches).

Additionally, Plaintiff cannot sue Defendants in their official capacities for monetary damages.  The Eleventh Amendment bars suits in federal court for monetary damages against state officials sued in their official capacities.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Walker v. Beard, 789 F.3d 1125, 1131 n.3 (9th Cir.), cert. denied, 577 U.S.

1015 (2015) (Secretary of California Department of Corrections and Rehabilitation and prison

warden immune from suit for damages in their official capacities).

The Eleventh Amendment does not bar an official capacity claim against a state

employee for prospective nonmonetary relief regarding allegedly unconstitutional state action.

See Will v.  Michigan Dep't of State Police, 491 U.S. at 71 n.10; Ex Parte Young, 209 U.S. 123,

159-60 (1908); Assoc. des Eleveurs de Canards et d'Oies due Quebec v. Harris, 729 F.3d 937,

943 (9th Cir. 2013), cert. denied, 574 U.S. 932 (2014).  However, to the extent Plaintiff seeks

nonmonetary relief against any Defendant in his or her official capacity for past wrongs, such

relief is unavailable.  See Green v. Mansour, 474 U.S. 64, 73 (1985) (declaratory judgment relief

based on a past violation, when there is no claimed continuing federal constitutional violation,

would be redundant to an award of monetary damages and, thus, is barred by the Eleventh

Amendment).

It appears Plaintiff may intend to sue Defendants Johnson and Dessenberger on a theory

that supervisors supposedly are liable for the acts of their subordinates.  However, Plaintiff may

not sue any supervisor pursuant to 42 U.S.C. section 1983 on any such theory.  See Polk County

v. Dodson, 454 U.S. 312, 325 (1981).  A supervisor "is only liable for his or her own misconduct,"

and is not "accountable for the misdeeds of [his or her] agents."  Ashcroft v. Iqbal, 556 U.S. at

667.  Mere knowledge of a subordinate's alleged misconduct is insufficient.  Id.  A supervisor

may be held liable in his or her individual capacity "for [his or her] own culpable action or

inaction in the training, supervision or control of [his or her] subordinates; for his acquiescence

in the constitutional deprivation . . . ; or for conduct that showed a reckless or callous

indifference to the rights of others."  Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th

Cir. 1998) (citation and quotations omitted; original brackets and ellipses).  To state a

cognizable section 1983 claim, "[a] plaintiff must allege facts, not simply conclusions, that show

that an individual was personally involved in the deprivation of his civil rights."  Barren v.

Harrington, 152 F.3d at 1194.  Plaintiff does not allege any facts showing the personal

involvement of any supervisor in the alleged constitutional violations.

It appears Plaintiff may have suffered a disciplinary conviction arising out of the alleged September 5, 2019 incident. To the extent Plaintiff seeks an order invalidating any disciplinary conviction which resulted in a credit loss, such claim is not cognizable in a section 1983 action. Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

To the extent Plaintiff seeks damages arising out of any alleged disciplinary conviction resulting in a credit loss, such claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994) ("Heck"). In Heck, the United States Supreme Court held that, in order to pursue a claim for damages arising out of an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. "If a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (citation and internal quotations omitted); see also Lemos v. County of Sonoma, 5 F.4th 979, 983 (9th Cir. 2021). However, "a plaintiff's allegation of excessive force by a police officer is not barred by Heck if the officer's conduct is 'distinct temporally or spatially from the factual basis for the [plaintiff's] conviction.'" Id. (citations omitted); see also Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir.) (en banc), cert. denied, 545 U.S. 1128 (2005).

Here, Plaintiff's excessive force claim appears to arise out of the same incident which resulted in the Rules Violation Report. In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied Heck to a due process challenge to prison disciplinary proceedings resulting in the loss of good time credits. However, it is unclear from the Complaint whether Plaintiff suffered

a disciplinary conviction involving a credit loss.  Therefore, the Court cannot yet determine with confidence whether <u>Heck</u> bars Plaintiff's excessive force claim for damages.

Plaintiff may be complaining of an alleged destruction of his books and papers.  Any constitutional claim based solely on alleged deprivation or destruction of property is legally insufficient.  A random and unauthorized taking of property does not constitute a denial of constitutional due process if state law provides an adequate post-deprivation remedy.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).  California state law provides an adequate post-deprivation remedy for random and unauthorized takings of property.  <u>See</u> <u>Barnett v. Centoni</u>, 31 F.3d 813, 817 (9th Cir. 1994).

Plaintiff may be complaining of an alleged violation of his right of access to the courts.  "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>see</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 406 (1996).  An inmate claiming a violation of his or her right of access to the courts must demonstrate that the inmate has standing to bring the claim by showing the defendant's actions caused the inmate to suffer "actual injury" in pursuit of either a direct or collateral attack upon a conviction or sentence or a challenge to the conditions of confinement.  <u>Lewis v. Casey</u>, 518 U.S. at 349.  The inmate must show that an action was "lost or rejected," or that presentation of a non-frivolous claim was or is being prevented, as a result of the alleged denial of access.  <u>Id.</u> at 356.  Actual injury is not demonstrated merely by a prisoner's "status of being subject to a governmental institution that was not organized or managed properly."  <u>Id.</u> at 350.  The Complaint contains no factual allegations sufficient to state a claim for denial of access to the courts under these standards.

The Complaint references issues regarding medical care.  A prison official can violate a prisoner's Eighth Amendment right to be free of cruel and unusual punishment if the official is deliberately indifferent to the prisoner's serious medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997).  "A 'serious' medical need exists if the failure to treat a

prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d at 1059 (citation omitted); see also Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (examples of "serious medical needs" include "a medical condition that significantly affects an individual's daily activities," and "the existence of chronic and substantial pain") (citation and internal quotations omitted).

To establish deliberate indifference, a prisoner must show that the prison official knew of and disregarded an excessive risk to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. at 837.  The official must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and must have also drawn the inference.  Id.  Thus, inadequate treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a constitutional violation.  Estelle v. Gamble, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  Farmer v. Brennan, 511 U.S. at 838.

Plaintiff's Eighth Amendment medical claim is unclear.  The Complaint appears to allege that Plaintiff did not receive appropriate medical treatment for injuries allegedly suffered during the September 5, 2019 incident.  Plaintiff does not allege facts showing that his claimed injuries gave rise to serious medical needs.  Plaintiff also does not identify which named Defendant(s), if any, supposedly were responsible for the failure to give Plaintiff appropriate medical treatment.  The Complaint contains no factual allegations showing that any Defendant was deliberately indifferent to any serious medical need of Plaintiff purportedly stemming from the alleged September 5, 2019 incident.  Certain attachments to the Complaint evidently concern medications, but appear unrelated to any Eighth Amendment claim alleged in the Complaint.

**ORDER**

The Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a First Amended Complaint.  Any First Amended Complaint shall be complete in itself and shall not

refer in any manner to the original Complaint.  Plaintiff may not add Defendants without leave of court.  <u>See</u> Fed. R. Civ. P. 21.  Failure timely to file a First Amended Complaint in conformity with this Order may result in the dismissal of the action.  <u>See</u> <u>Pagtalunan v. Galaza</u>, 291 F.3d 639, 642-43 (9th Cir. 2002), <u>cert. denied</u>, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); <u>Simon v. Value Behavioral Health, Inc.</u>, 208 F.3d 1073, 1084 (9th Cir.), <u>amended</u>, 234 F.3d 428 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1104 (2001), <u>overruled on other grounds</u>, <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541 (9th Cir.), <u>cert. denied</u>, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive problems with his claims); <u>Plumeau v. School District #40, County of Yamhill</u>, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

DATED:  September 24, 2021

_____

Hon. JOSEPHINE L. STATON

UNITED STATES DISTRICT JUDGE

PRESENTED this 26th day of
August, 2021, by:
_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE